RECEIVED
OVER THE COUNTER
DEC 1 1 2006
THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GRUNLEY-WALSH, LLC
(f/k/a Grunley-Walsh Construction JV) *

Plaintiff, *

v. *

THE UNITED STATES OF AMERICA *

Defendant. *

Case No. : 06-837 C
Judge:
(Undercut & Backfill
Unsuitable Soils Claim)

FILED
DEC 1 1 2006
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * *

## COMPLAINT

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos.1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL and 1:06-cv-00816-CFL, as it arises out of the same contract and, therefore, should be consolidated with the aforesaid cases.

### The Parties

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

**The Contract**

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A**. Three of these provisions were the Changes clause (FAR 52.243-04 August 1987), the Differing Site Conditions clause (FAR 52.236-02 April 1986), and the Disputes clause (FAR 52.233-01 December 1998).

6. In accordance with the Contract, on December 5, 2003, Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the lump sum amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish the work contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including its Attachment 1 Project Requirements is attached hereto as **EXHIBIT B**.

7. The drawings and specifications prepared by the Olin Partnership are dated November 25, 2003 and purport to be the 90% Construction Drawings.

**The Certified Claim for Undercutting and Backfilling Unsuitable Soils**

8. This action relates to an October 6, 2006 certified claim, in the amount of $56,919 submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause, the Differing Site Conditions clause and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

9. By letter dated October 18, 2006 (attached as **EXHIBIT D**), the Contracting Officer advised that a Final Decision would not be issued on the Certified Claim until after Grunley-Walsh had submitted all their claim submissions for the Project. Specifically, the Contracting Officer stated in his October 18, 2006 letter he would be "issuing one final decision after we have received the final claim in the series." In doing so, the Contracting Officer did not provide a time and/or a date certain for when a Final Decision on the Certified Claim could be expected.

10. Based on the Contracting Officer's October 18, 2006 letter, the time within which the Contracting Officer will issue a Final Decision is left open ended.

11. As permitted by the Contract Disputes Act, more than 60 days has elapsed since submission of the Certified Claim; there has been no Final Decision issued on the Certified Claim; and the Contracting Officer has not committed to a date by when a Final Decision on the Certified Claim will be issued. As such, the Certified Claim is deemed denied.

**Factual Background for the Certified Claim**

12. To prepare the November 25, 2003 construction drawings and to identify the work required in Task Order No. 35, the Olin Partnership was issued existing background drawings by the National Park Service.

13. The background drawings provided by the Park Service provided no information concerning the existing subsurface soil conditions at the Project. Although a June 10, 2002 subsurface investigation report was prepared pursuant to Task Order No. 22 (for use in designing the new security wall and proposed Visitor Facility), this report did not provide information concerning subsurface soil conditions in the areas where unsuitable soils were encountered (where new sidewalks were to be constructed). Given these facts, and because the Contract contained a standard Government Differing Site Conditions clause, Grunley-Walsh reasonably believed they would be provided an equitable adjustment for unknown differing site conditions, relating to unsuitable sub-grade soils, when and if they were encountered.

14. During the course of the Project, there were numerous instances where differing site conditions were encountered and contract modifications were issued for the additional costs involved. For example, in Modification No. 6 to Task Order No. 35 (Item G) (see **Exhibit 2** to the Certified Claim), Grunley-Walsh was compensated $89,402 for undercut, removal and backfill of unsuitable soil at the Monument plaza (during the periods: 12/17/04 through 2/1/05 and 5/7/05 through 6/2/05). Modification No. 6 (Item F) also compensated Grunley-Walsh $18,989 for undercut, removal and backfill of unsuitable soil during the periods: 5/11/04 through 5/18/04 and 10/4/04 through 10/5/04.

15. The claim that is the subject of this action is for the same type of undercut, removal and backfill work which had to be done at sidewalk areas - primarily at the South and Southeast side of the Project. The first of these areas was east and southeast of the Monument Lodge – one of the lowest areas of the project site; making it a natural area for drainage and resulting unsuitable subsurface soil conditions. The site observation reports of Geo Concepts

(see **Exhibit 3** to the Certified Claim) specifically identified the areas where this work had to be performed.




Approximate Locations of Unsuitable Soils East & Southeast
Of the Monument Lodge

16. When the unsuitable soils were discovered in these areas - in or about early February 2005 - the Government's representative on site, Steve Sims, observed them and concurred they were unsuitable. At an on on-site meeting with Mr. Sims, the Government even asked Grunley Walsh's subcontractor, Cherry Hill, for recommendations as to how to address the problem. It was at this meeting when the decision was made and Grunley-Walsh / Cherry Hill were directed to perform the undercut and backfill work in question.



February 2005 – Steve Sims Observing Undercut Operation in Area Southeast of the Monument Lodge



February 2005 – Unsuitable Soil Southeast of the Monument Lodge



February 2005 – Unsuitable Soil Southeast of the Monument Lodge



March 2005 – Undercut & Backfill work Southeast of the Monument Lodge Complete; Plastic Protecting Sidewalk Sub-grade

17. The unsuitable soil problem in these areas adjacent to the Monument Lodge was exacerbated by the Government's desire to have these areas of the Project open by March 1,

2005 (for public access to the Monument). In turn, this required the grading work in this area of the Project to be done during the winter – one of the worst times to perform grading work.

18. The second unpaid change directive relating to undercutting and backfilling work was for small sections of sidewalk sub-grade southwest of the Monument Lodge and northwest of the monument itself. This work was done on April 20 and 21, 2005. The site observation reports of Geo Concepts (see **Exhibit 4** to the Certified Claim) specifically identify the areas where this work had to be performed.



Approximate Locations of Unsuitable Soils Southwest of
the Monument Lodge & Northwest of the Monument

19. The third unpaid change directive relating to undercutting and backfilling work was for small sections of sidewalk sub-grade south and northeast of the Monument itself. This work was done between May 7, 2005 and June 2, 2005. The site observation reports of Geo Concepts (see **Exhibit 5** to the Certified Claim) specifically identify the areas where this work had to be performed.



Approximate Locations of Unsuitable Soils South and Northwest of the Monument

20. After Grunley-Walsh's submission of the change proposals for the performance of this undercutting and backfill work, the Park Service issued an undated letter (see **Exhibit 6** to the Certified Claim). In their letter, the Park Service alleged, without any supporting facts, the undercutting and backfill work adjacent to the Monument Lodge (see paragraph 15) was the result of Grunley Walsh's subcontractor's failure to properly protect the site. Grunley Walsh disputes this allegation.

21. The Project consisted of a 65 acre construction site which was subject to many adverse conditions. It was not Grunley Walsh's responsibility to protect the grounds with plastic so no moisture would penetrate the soils. Where wet soils were encountered, most of the time

they were simply dried out. In certain areas, however, the soils were too saturated / unsuitable for drying out. No matter what was done to the soil, it simply would not provide an adequate, structural sub-grade for supporting the sidewalk paving work.

22. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on October 6, 2006, Grunley-Walsh submitted its Certified Claim for the unpaid change work related to the undercut, removal and backfill of unsuitable soils; requesting a Contracting Officer's Final Decision on the matter.

23. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

24. The allegations contained in paragraphs 1 through 23 above are incorporated by reference as through fully set forth herein.

25. In accordance with the Contract Differing Site Conditions clause, the Government is required to provide an equitable adjustment for the additional costs stemming from differing conditions encountered on the Project. The Government has failed to comply with this Contract clause.

26. In accordance with the Contract Changes clause, the Government is required to provide an equitable adjustment for additional costs caused by any change to the performance of any part of the work. The Government has failed to comply with this Contract clause.

27. As a result of the foregoing and pursuant to the Contract, Grunley Walsh is entitled to an equitable adjustment in the amount of $56,919 for the additional costs to perform change work related to the undercutting, removal and replacement of unsuitable soils on the Project.

27. As such, the Government is liable to Grunley-Walsh for $56,919, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $56,919, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 12-11-2006